**HAYS CONSOLIDATED INDEPEN-
DENT SCHOOL DISTRICT,
Appellant,**

v.

**VALERO TRANSMISSION
COMPANY, Appellee.**

**No. 13450.**

Court of Appeals of Texas,
Austin.

Nov. 24, 1982.

Rehearing Denied Feb. 9, 1983.

Earl L. Yeakel, III, Mark T. Mitchell, Kammerman, Yeakel & Overstreet, Austin, Chester E. Young, Austin, for appellant.

Edward Kliewer, III, Scott E. Breen, Foster, Lewis, Langley, Gardner & Banack, Inc., San Antonio, for appellee.

Before PHILLIPS, C.J., and SHANNON and POWERS, JJ.

POWERS, Justice.

Appellant, Hays Consolidated Independent School District, appeals a take-nothing judgment entered by the trial court in the district's suit against appellee, Valero Transmission Co., to recover delinquent ad valorem taxes in the amount of $11,770.34, together with penalties and interest. The taxes result from the school district's 1979 assessment of the ad valorem tax against 52.34 miles of gas pipeline owned by appellee. We will reverse the judgment of the trial court.

Appellant's petition was in regular form. Appellee appeared and answered with a general denial only, praying that appellant take nothing, for general relief, and for its costs. Over appellant's objections, appellee introduced at trial evidence from which the trial court made findings of fact and conclusions of law, as follows:

### Findings of Fact

\* \* \* \* \* \*

5. That the Board of Equalization of the District placed a fair market value of $1,165,380.00 on the property owned by the Company within the District;

6. That the actual fair market value of such property is no more than $671,-000.00;

7. That the valuation placed on the Company's properties for the 1979 ad valorem tax year by the District is grossly in excess of the fair market value and the fair assessed value of said property;

8. That the District, in placing a value on the land within the District for ad valorem tax purposes (which had not qualified for the agricultural use valuation) at less than $100.00 an acre, adopted an arbitrary and discriminatory plan and scheme of taxation, in that such valuations are far below the true market value of such land;

9. That while the claimed assessment ratio for the 1979 ad valorem tax year was 50% of market value, ranch and farmland was placed on the tax roll at less than 8% of market value;

10. That ranch and farmland within the District was assessed for tax purposes at 7.22%, while properties of the Company were assessed for tax purposes in excess of 50%;

### Conclusions of Law

1. The District has adopted an unconstitutional, illegal and void scheme and plan of taxation for the 1979 tax year as the same applies to the Company in that the valuations placed on the Company's properties for the 1979 ad valorem tax year were grossly in excess of the fair market value of such property as well as the fair assessed valuation of such property.

2. The assessment of taxes placed on the Company's properties for the 1979 ad valorem tax year by the District are invalid and void.

As with the foregoing findings of fact and conclusions of law, we may not avoid reciting the major part of the trial court judgment:

The Court after hearing the testimony, evidence and argument of counsel, finds that the assessment of taxes for the 1979 ad valorem tax year on Defendant's properties ... was grossly in excess of fair market value and grossly in excess of the fair assessed valuation of such property and is therefore void and invalid. Based on such findings, the Court is of the opinion that judgment should be rendered in favor of Defendant Valero Transmission Company.

It is therefore ordered, adjudged and decreed:

1. That the valuation placed on Defendant's properties for the 1979 ad valorem tax year by Plaintiff ... is grossly in excess of the fair market value and the fair assessed value of said property;

2. That the assessment of taxes placed on Defendant's properties for the 1979 ad valorem tax year by Plaintiff are [sic] invalid and void, therefore Plaintiff take nothing [sic].

We observe that the judgment of the trial court omits to mention that it rests upon the court's findings and conclusions of law relative to an "unconstitutional, illegal and void scheme and plan of taxation," and recites only that it rests upon the court's findings and conclusions of law relative to a grossly excessive assessment of appellee's property. We will, in the discussion which follows, treat the judgment as resting upon both grounds.

Appellant complains in two points of error that the trial court's judgment, findings of fact, and conclusions of law, insofar as they establish the two grounds mentioned above, are not supported by appellee's pleading, that being a general denial only. We sustain these points of error.

It is required in our rules of procedure that "[t]he judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity." Tex.R.Civ.P.Ann. 301 (1977). Evidence will not cure the failure of a judgment to conform to the pleadings. *Hartford Accident & Indemnity Co. v. Moore,* 102 S.W.2d 441, 443 (Tex.Civ.App. 1935, writ ref'd). With regard to what must be pleaded, our rules provide that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively ... fraud, illegality ... and any other matter constituting an avoidance or affirmative defense." Tex.R.Civ.P.Ann. 94 (1979).

As will be shown below, appellee's general denial placed in controversy only the elements of appellant's right to recover and any judgment entered by the trial court would properly be confined to those elements, awarding relief to one party or the other according to the court's findings and conclusions with respect to those elements only. There being no affirmative defense pleaded by appellee, the trial court could not, in the absence of a trial by consent, which is neither claimed nor shown in the

present case, award judgment based thereon. We think it abundantly clear that the two possible grounds upon which the judgment could rest in the present case are affirmative defenses which appellee had the burden of pleading and proving.

■ Affirmative defenses, as opposed to a defendant's denials, are the propositions which a defendant may assert and interpose to defeat a *prima facie* case made by the plaintiff. "They open the way for the defendant to introduce evidence which does not tend to rebut the factual propositions asserted in plaintiff's case, but which seeks to establish an independent reason why the plaintiff should not recover." 2 McDonald, Texas Civil Practice, § 7.34.1, at 220 (1982).

■ Appellee's general denial struck directly at appellant's claim of a right to recover delinquent taxes, penalty, and interest, imposing upon the district the burden of proving the elements of its cause of action, and enabling appellee to negative such elements by evidence of its own. When, as happened in the court below, the taxing authority introduces the tax rolls into evidence, together with evidence that the tax has not been paid, it makes out a *prima facie* case, which is to say that the authority need not prove the validity of its assessment, the lawfulness of its tax rate, or the taxpayer's ownership of the property. *Alamo Barge Lines, Inc. v. City of Houston,* 453 S.W.2d 132 (Tex.1970); *State v. Whittenburg,* 153 Tex. 205, 265 S.W.2d 569, 572 (1954). Unless the taxpayer establishes independent reasons why the taxing authority should not recover, it will be entitled to judgment. As will be discussed below, these "independent reasons" were limited to the defenses allowed by statute.

There is no doubt that appellee itself, at trial, viewed its obligation accurately; that is, appellee recognized the *prima facie* case likely to be made by appellant and that independent reasons would have to be shown to prevent appellant's recovery. At the opening of the case in the trial court, appellee's counsel stated as much, saying:

... Your Honor, this is a delinquent tax suit. That much we agree to. However,

there are defenses to a delinquent tax suit. If a taxpayer permits the tax roll to go into effect and be certified as was done in this case, since these are 1979 taxes that are due, there are defenses to which a taxpayer is permitted to put on testimony to show why the amount of taxes that the taxing jurisdiction alleges to be due are excessive and, in this case, Your Honor, we're going to exercise the rights permitted to us by both the case authority and the statutes to put on evidence to show that, one, this property *was valued grossly in excess of its market value,* ... and further, that irrespective of market value, that local values within the Hays Consolidated School District are on the tax roll in 1979 at far less than the claimed 50 percent ... assessment ratio which is assessed against this property. And finally, Your Honor, we'll present evidence that the taxing jurisdiction agreed to a value less than that ultimately placed on the property and it was not until the tax statement was received that the taxpayer became aware of the fact that the agreed-to value was not going to be used. *All three of those being defenses to a delinquent tax suit, we recognize that we have an onerous burden.* [emphasis added]

Thus, appellee correctly recognized that a judgment in its favor must rest upon the trial court's finding the elements of an independent proposition which appellee had the burden to establish by the evidence, and not upon a deficiency of the evidence with regard to the facts of assessment and nonpayment. In the context of the appeal before us, that independent proposition was the alleged invalidity of appellant's assessment.

■ The provisions of Tex.Rev.Civ.Stat. Ann. art. 7329 (repealed eff. Jan. 1, 1982) were applicable to the case now under review and provided:

There shall be no defense to a suit for collection of delinquent taxes, as provided for in (Title 122, ch. 10) except:

1. That the defendant was not the owner of the land at the time the suit was filed.

2. That the taxes sued for have been paid; or

3. That the taxes sued for are in excess of the limit allowed by law, but this defense shall apply only to such excess.

1973 Tex. Laws, 2d Called Session, ch. 13, § 16, at 36.

In *Alamo Barge Lines, supra,* the Supreme Court of Texas described the first of the three designated defenses as being, in its essence, an affirmative defense. 453 S.W.2d at 134. We conclude that the defense designated in subdivision 3 of the statute is an affirmative defense, as well, and was required to be specifically pleaded by appellant in the present case. Rule 94, *supra.* Our conclusion is based not merely upon parallelism in the statute but upon the principle of fair notice which underlies rule 94 and upon the necessary scope and effect of the well-established rule that the taxing authority proves a *prima facie* case merely by showing assessment and non-payment.

▮▮▮▮ Article 7329, in purporting to limit the affirmative defenses available to a taxpayer in a delinquency suit, must be interpreted in light of the applicable provisions of the Constitution of the State of Texas, which provide that "[t]axation shall be equal and uniform;" that "[a]ll real property and tangible personal property ... shall be taxed in proportion to its value, which shall be ascertained as may be provided by law;" and that "[n]o property of any kind ... shall ever be assessed for ad valorem taxes at a greater value than its fair cash market value nor shall any [taxing authority] fix the value of any property for tax purposes at more than its fair cash market value ..." Tex.Const.Ann. art. VIII, § 1 (Supp.1981); Tex.Const.Ann. art. VIII, § 20 (1955). Accordingly, article 7329 is construed so that subdivision 3 encompasses not only a defense based upon an excessive tax rate or an assessed value which exceeds market value, but also defenses based upon discrimination between taxpayers. *Whelan v. State,* 155 Tex. 14, 282 S.W.2d 378, 383 (1955). That being the case, subdivision 3 of article 7329 encompassed a wide variety of factual circumstances, whether the result of the tax was to exceed the lawful limit or to discriminate between taxpayers; and, in the case of a taxpayer's attack upon an assessed valuation, whether his attack was based upon conclusory allegations of fraud, want of jurisdiction, illegality, or the adoption of an arbitrary and fundamentally erroneous plan or scheme of valuation.[1] *State v. Whitten-*

---

1. Assuming a taxpayer's property is within the jurisdiction of the taxing authority, he must, to defeat the presumption of the validity of the assessment, introduce evidence from which the trier of fact may conclude that the assessment is *unconstitutional* (owing to inequality, lack of uniformity, or a failure to assess in proportion to market value), or the result of *fraud, arbitrariness,* or *illegality* attributable to the taxing authority. *City of Arlington v. Cannon,* 153 Tex. 566, 271 S.W.2d 414 (1954); *State v. Whittenburg, supra.* For example, in *Cannon,* the trial court found that the taxing authority, by virtue of a preconceived plan, omitted entirely to tax certain kinds of personal and real property; that by ignoring market value as a basis for valuation, the board of equalization "used an arbitrary, illegal and fundamentally wrong method in arriving at values of real estate;" and that it ignored a resolution requiring all property to be taxed at 60% of its value, in favor of its "arbitrary and illegal plan of assessing different classes of property at different percentages of value." *Dallas County v. Dallas National Bank,* 142 Tex. 439, 179 S.W.2d 288

(1944) affords another example; the taxing authority assessed the taxpayer's land at about seven times the value placed on neighboring lands of the same character, with a resulting violation of the Constitution's requirement of equal and uniform taxation.

The taxpayer operates under several strictures in making the showing required to defeat the taxing authority's *prima facie* case. First, he must show that his assessment is not only excessive, but *grossly* excessive. *Whelan v. State,* 155 Tex. 14, 282 S.W.2d 378, 385 (1955). This subjective measure generates troublesome uncertainty in its application in specific cases:

Some courts indicate that the taxpayer must demonstrate fraud or illegality, but they tautologically hold that an excessive assessment constitutes evidence of fraud or illegality. Other courts have attempted to combine notions of fraud with a somewhat esoteric definition of grossly excessive—assessments which "shock a correct mind." The courts seem to be striving for an element of blatantness that is something more than a disagree-

ment between experts about the cash value of the property. They have not, however, explicitly defined the precise amount by which an assessment must exceed cash market value before it will be invalidated.

Yudof, *The Property Tax in Texas Under State and Federal Law*, 51 Tex.L.Rev. 885, 897 (1973).

Second, if the taxpayer claims unlawful or arbitrary discrimination, it is ordinarily not enough for him to show merely that in isolated instances, other property of like kind was valued at a lesser sum. While he is not required to make a comparative showing with respect to *all* other property in the jurisdiction of the taxing authority, "he must make at least a reasonable showing in that respect," *State v. Whittenburg, supra,* 265 S.W.2d at 573; or, if he relies upon the omission of property from the tax rolls as a basis for his claim of discrimination, he must show that "the omission was the result of a deliberate and arbitrary plan or scheme to permit certain classes of property to escape their fair share of the tax burden." *Id.* In other words, the omission of certain property is not enough, standing alone.

Third, if relief is sought on the basis that the taxing authority employed unlawful methods in arriving at assessed value, the taxpayer may not have such relief unless *his* property was *actually* and *substantially* affected. For example, in *City of Arlington v. Cannon, supra,* the board of equalization assessed property at varying percentages of market value, as opposed to the 60% mandated by resolution of the taxing authority's governing body. The Supreme Court of Texas qualified the taxpayer's right to relief by saying:

> In so far as relief was sought upon the basis that unlawful methods used by the board in arriving at values of real property have resulted in excessive—as distinguished from unequal—assessed valuations being placed thereon, only those owners of real property who can establish that the unlawful procedures have resulted in actual assessment of their property at substantially more than 60% of market value would be entitled to relief, and then only as to the excess. In so far as relief is sought upon the basis that the unlawful methods used by the board in arriving at values of real property have resulted in unequal values being placed thereon, only those owners of real property who can make a reasonable showing of actual and substantial discrimination against them would be entitled to relief.
>
> . . . In so far as relief is sought by the owners of personal property upon the basis that higher percentages were applied to the property of the litigants, only those owners who can establish that their personal property was *actually* assessed at a substantially higher percentage of its market value than that used for other property would be entitled to

relief, and then only to the extent of the excess.

271 S.W.2d at 417 (emphasis in original).

Fourth, "[i]f the taxpayer delays his attack upon his assessment until after the board of equalization has approved the tax rolls and the process of collection has begun, he has only a slim chance of success." Yudof, *supra,* at 903. This conclusion results from disabilities placed upon a taxpayer who bases his claim for relief upon the omission of taxable property from the rolls or upon any other unlawful or arbitrary action by the taxing authority. The disabilities are designated as follows:

> First, the taxpayer must prove injury with more precision than in a suit for an injunction prior to the finalization of the rolls. Thus, it is not enough to show that certain property has completely escaped taxation; the taxpayer must place a value on the omitted property, calculate the reduction in tax rate if the property has been taxed, and determine the exact amount of money that he would have saved. [*State v. Federal Land Bank,* 160 Tex. 282, 329 S.W.2d 847 (1959)]. Since probably not even the assessor or the board of equalization knows the true market value of omitted property, this requirement almost invariably kills the taxpayer's claim. Second, the recovery of the taxpayer who files his suit after the taxing scheme has been put into effect is limited to the "excess," a term that has no precise meaning. [*City of Arlington v. Cannon, supra.*] This requirement may mean that the taxpayer can no longer enjoin the entire collection process, but can only recover taxes for which he is not lawfully liable. If so, the language changes nothing, since this is the typical remedy in any event. On the other hand, the "excess" requirement may mean that the taxpayer may not attack the omission of property from the tax rolls or inequalities in assessment; he may only prevail if the assessment of his property substantially exceeds market value. Since fractional assessment is widely practiced, however, the "excess" doctrine indicates that a taxpayer in an unfavorable posture may not prevail with a showing that his assessment is above the [taxing authority's] ratio but below full market value. If the latter interpretation is correct, the delaying taxpayer has only a single ground upon which to attack his assessment and cannot prevail when omission or inequality is shown, even if he meets the more stringent proof requirement. The requirement of excessiveness is thus inconsistent with the implicit premise of the dollar injury requirement. While courts may characterize the excessiveness doctrine as part of the taxpayer's burden of proof, in reality the doctrine substantively limits the legal grounds upon which he may attack the assessment of his property.

Yudof, *supra,* at 904–905.

*burg, supra.* The variety of possibilities in this respect highlights the wisdom of rule 94 and the principle of fair notice upon which it rests. Whatever the factual propositions, the defense was an affirmative one which the taxpayer was required to establish by proof to overcome the taxing authority's proof of assessment and non-payment, that is, its *prima facie* case. We hold, therefore, that the trial court erred in declaring the district's assessed valuation void and invalid on the basis that it was grossly in excess of that allowed by law or the basis that it resulted from a discriminatory plan or scheme adopted by the district. There being no pleading to support these affirmative defenses, and no trial by consent in that respect, the court could not enter judgment thereon. Rules 94, 301, *supra.*

We are required to reverse the trial-court judgment on another ground raised by appellant. Appellee elected to delay its attack upon the assessed valuation until appellant sought to collect the ad valorem tax by suit. As mentioned in the footnote, the taxpayer's substantive right to challenge the assessment is, in practical effect, severely circumscribed when he so delays his challenge to the assessment. It is not enough, at that point, to show alone that the assessment results from an arbitrary, unlawful, and discriminatory plan; the taxpayer must establish the extent to which his assessment is excessive, for his relief is limited to that sum.

In *State v. Federal Land Bank of Houston,* 160 Tex. 282, 329 S.W.2d 847, 850 (1959), the Supreme Court of Texas said:

> The government does not lose its right to taxes on one parcel of property by reason of the failure of its officers, either negligently or designedly, to assess other property that is likewise taxable. Once such a plan is put into effect, the litigant may defeat the recovery of taxes only to the extent they are excessive; and he must prove the excessiveness. *City of Arlington v. Cannon,* 1954, 153 Tex. 566, 271 S.W.2d 414. When the attack is made because the taxing authority has followed an arbitrary plan or scheme, the taxpayer, to prevail, must show not only that the plan was an arbitrary and illegal one but also that the use of the plan worked to his substantial injury . . . .

> In cases previously before this Court, proof of substantial injury has been held to mean that the taxpayer must prove that his taxes are excessive or substantially higher by virtue of the omission of the taxable property and the failure to assess taxable property at its market value. *Whelan v. State,* supra; *State v. Whittenburg,* supra. As stated by Judge Brown of the Fifth Circuit after reviewing the Texas cases, "It must finally be translated into hard dollars out of the complaining taxpayer's pocket." * * * no matter how much it [the tax plan] violates the State Constitutional pattern, the only relief of a taxpayer defending delinquent tax suit [sic] is to show in dollars that he is worse off." *City of Orange, Texas v. Levingston Shipbuilding Co.,* 5 Cir., 1958, 258 F.2d 240, at pages 246 and 248. [omission in original]

We note the similarity of the complaint in the present case to that in *Federal Land Bank, supra,* where the Court concluded the assessment plan was "arbitrary and fundamentally erroneous," but held that the taxpayer failed to prove substantial injury:

> The fixing of the values of the various mineral interests at an arbitrary rate without regard to market value and the assigning of a value, or an additional value, to the mineral interests under same lands and taxing them, and not similarly valuing and taxing the minerals under other similar lands, is clearly contrary to the injunction put upon taxing authorities by Sec. 1 of Article 8 of the Texas Constitution which provides that:

> > "Taxation shall be equal and uniform. All property in this State * * * shall be taxed in proportion to its value * * *."

329 S.W.2d at 849 [omission in original].

■ There is no determination in the present case of the amount of the excess, a

sum which is required to measure the extent of relief to which appellee is legally entitled by reason of the grossly excessive valuation or the "unconstitutional, illegal and void scheme and plan of taxation" found by the trial court. Article 7329, *supra; State v. Federal Land Bank of Houston, supra.* We therefore sustain appellant's point of error.

Accordingly, we reverse the judgment of the trial court and remand the cause to that court for the entry of judgment in the amount of the delinquent tax, $11,770.34, together with the penalties and interest owing thereon, to be determined by the trial court.

PHILLIPS, C.J., not participating.