NOBLE EXPLORATION,
INC., Appellant,

v.

NIXON DRILLING CO., INC., Appellee.

No. 3–88–153–CV.

Court of Appeals of Texas,
Austin.

Aug. 8, 1990.

Ronald O. Holman, Dallas, for appellant.

Allan I. Schneider, Giddings, for appellee.

Before POWERS, GAMMAGE and JONES, JJ.

GAMMAGE, Justice.

Noble Exploration, Inc. (Noble) appeals from a take-nothing judgment in the district court in its suit against Nixon Drilling Company (Nixon). Noble brings two points of error, arguing that the district court erred in admitting certain evidence and in rendering judgment in favor of Nixon because the evidence established as a matter of law that instruments filed by Nixon were insufficient to fix and secure a lien under Tex.Prop.Code Ann. § 56.002 (1984)[1] against Noble's oil and gas leasehold estate. We will reverse the judgment of the trial court.

Between September 1986 and February 1987, Anthony Exploration Company, Inc. (Anthony), Noble's predecessor-in-interest, acquired an oil and gas leasehold estate in approximately 101.3 acres of land in Lee County. On March 1, 1987, Anthony purportedly entered into a "farmout agreement" with Nobleson Operating, Inc. (Nobleson) (which is not a party to this lawsuit), assigning the working interest, subject to Anthony's overriding royalty interest, to Nobleson in return for Nobleson's drilling and completing a commercially producing well on 40 acres of the land. On March 17, 1987, Nobleson entered into a drilling contract with Nixon to drill a well, "Carleston No. 2," on the land.

The record is sketchy regarding the drilling and status of the well. Jerry Nixon, president of Nixon, testified that Nixon encountered problems after drilling Carleston No. 2 and was not paid for its services. He further testified that Nixon filed suit against Nobleson in a separate proceeding and that a counterclaim was filed against Nixon. Anthony Noble, president of both Noble and Anthony, testified that Carleston No. 2 was never completed as a well capable of commercial production.

On May 28 and June 17, 1987, Nixon filed instruments entitled "Statement of Lien and Affidavit" and "Mechanic's and Materialmen's Lien Affidavit," purporting to fix and secure a lien on the entire leasehold pursuant to chapter 56 of the Property Code. Nixon subsequently filed a "Partial Release of Lien," releasing and discharging from its lien all but the 40 acres surrounding the Carleston No. 2 well.

Anthony then filed suit against Nixon seeking a declaratory judgment that the lien affidavit was invalid; removal of cloud on its title created by the filing of Nixon's lien affidavit; and actual damages, exemplary damages, and attorney's fees. Nixon answered by general denial. Before trial, Anthony assigned its interest in the oil and gas leasehold estate to Noble, and the trial court entered an order substituting Noble as real-party plaintiff. Following a bench trial, the trial court entered a take-nothing judgment in favor of Nixon, giving rise to this appeal by Noble.

■ No findings of fact or conclusions of law were requested or filed. In a nonjury trial, where no findings of fact or conclusions of law are filed or requested, all necessary findings to support the trial court's judgment will be implied. *E.g., Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980). Such implied findings, however, may be attacked by evidentiary points of error, just as with jury findings and findings entered by a trial court. *Id.*

■ Noble brings a legal insufficiency argument in its first point of error, arguing that the evidence established as a matter of law that Nixon improperly secured a lien against Noble's mineral leasehold estate under chapter 56. In reviewing a "matter of law" challenge, the reviewing court employs a two-prong test. The court will first examine the record for evidence that supports the finding, ignoring all evidence to the contrary. If there is no evidence to

---

1. Unless otherwise indicated, all statutory references are to Tex.Prop.Code Ann. (1984).

support the finding, the court will then examine the entire record to see if the contrary proposition is established as a matter of law. If the contrary proposition is established conclusively by the evidence, the point of error will be sustained. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

In applying this standard, we must also be mindful of the rule that in a nonjury trial, where no findings of fact or conclusions of law are filed or requested, the trial court's judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978).

■ Chapter 56 is the exclusive statute governing liens against mineral property to secure payment for labor or services related to mineral activities. Persons entitled to liens under this statute are not entitled to liens provided by other statutes. *Ball v. Davis,* 118 Tex. 534, 18 S.W.2d 1063, 1066 (1929). Section 56.002 provides:

A mineral contractor or subcontractor has a lien to secure payment for labor or services related to the mineral activities.

The term "mineral contractor" is defined in § 56.001(2):

'Mineral contractor' means a person who performs labor or furnishes or hauls material, machinery, or supplies used in mineral activities *under an express or implied contract with a mineral property owner or with a trustee, agent, or receiver of a mineral property owner.*

(Emphasis added.)

Applying these tests, we examine the record looking first only at evidence that would support a finding of an implied or express contract between Nixon and a mineral property owner or its trustee, agent, or receiver. The record reveals by unchallenged exhibits that Anthony owned the mineral leasehold estate. Because we find no evidence in the record of a contract between Nixon and any other mineral property owner or a trustee or receiver of Anthony's, we direct our search to evidence of a contract between Nixon and Anthony or its agent.

Nixon does not argue there was, and we find no evidence of, an express contract with Anthony. Instead, Nixon argues on appeal both that Nobleson was Anthony's agent and that an implied contract existed between Nixon and Anthony. Nixon bases these arguments on (1) an asserted blending of corporate activities and unity of stock ownership between Anthony and Nobleson and (2) the existence of a contract between Anthony and Nobleson at the time Nobleson and Nixon entered into their contract.

At trial, Anthony Noble testified on cross-examination that he was president of Anthony and his mother and father were its vice-presidents and sole shareholders; that his mother and father are stockholders in Noble; that his father is president of Nobleson and his father and mother "and possibly someone else" are shareholders in Nobleson; and that all three corporations—Anthony, Noble, and Nobleson—share the same offices, employees, and telephone lines. Anthony Noble further testified on cross-examination that his father, Bill Noble, was aware of the contract between Nobleson and Nixon, having signed it himself on behalf of Nobleson. The contract, introduced into evidence by Nixon, was signed by Bill Noble, Nobleson Operating, operator; Jerry Nixon, Nixon Drilling Co. contractor; and another contractor, not a party to this lawsuit.

■ This testimony is evidence of alter ego and, because it was offered by Nixon as a "proposition ... to defeat [Noble's] prima facie case ... [by] seek[ing] to establish an independent reason why [Noble] should not recover," *Hays Consol. Indep. School Dist. v. Valero Transmission Co.,* 645 S.W.2d 542, 546 (Tex.Civ.App.1983, writ ref'd n.r.e.), constitutes an affirmative defense. *Id.* Affirmative defenses must be pleaded and proved or they are waived, and where a defendant's answer is a general denial, all affirmative defenses are waived. *Christian v. First Nat'l Bank of Weatherford,* 531 S.W.2d 832, 836 (Tex.Civ.App.1976, writ ref'd n.r.e.). Nixon answered by general denial and waived any affirmative defenses to which he may have

otherwise been entitled. We may not, consequently, disregard the separate corporate identities of Anthony and Nobleson.

■ Nixon also argues that the existence of a "farmout" contract between Anthony and Nobleson at the time that Nobleson and Nixon entered into their drilling contract supports both an implied finding of an implied contract between Anthony and Nixon and an implied finding that Nobleson acted as Anthony's agent in contracting with Nixon. Whether such evidence, if before us, would support either finding is immaterial because the Anthony–Nobleson contract is not properly included in the record. Although the contract was attached to Nixon's reply to Anthony's motion for partial summary judgment, it was not introduced into evidence at trial on the merits, and we may not consider it on appeal. *Wright v. Gifford–Hill & Co.*, 736 S.W.2d 828, 835, n. 2 (Tex.App.1987, writ ref'd n.r.e.).

Disregarding, as we must, the Anthony–Nobleson contract and the evidence supporting the affirmative defense of alter ego, we find no evidence to support a finding that Anthony and Nixon had an implied contract or that Nobleson was acting as Anthony's agent in negotiating and entering into the contract with Nixon.

■ Implied contracts, of course, may be implied in fact or in law. In this case, the evidence fails to support a finding of contract implied in fact because, absent the evidence of alter ego, there is no evidence of a mutual agreement between Anthony and Nixon, an essential element for a contract implied in fact. *See, e.g., Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex.1972). There was no evidence offered to the effect that Anthony—acting through its purported agent, Bill Noble, or otherwise—or Nixon intended to negotiate or enter into an Anthony–Nixon contract. Jerry Nixon testified that he entered into the contract with Nobleson instead of Anthony because he thought Nobleson was the owner and admitted that he failed to search the public records. There is no evidence to show that Bill Noble or Nobleson

represented to Nixon that Nobleson was an owner. The contract between Nobleson and Nixon listed Nobleson as "operator" only. Regardless, Nixon is charged with constructive notice of the actual knowledge that could have been acquired by examining public records. *E.g., Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex.1981).

■ Moreover, we conclude an implied finding of a contract, implied either in fact or law, is precluded here because of the existence of an express contract covering the subject matter—the Nobleson–Anthony contract. *Woodard v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex.1964); *Kittyhawk Landing Apts. v. Anglin Constr. Co.*, 737 S.W.2d 90, 92, n. 1 (Tex.App.1987, writ ref'd n.r.e.); *Morales v. Dalworth Oil Co.*, 698 S.W.2d 772, 774–775 (Tex.App. 1985, writ ref'd n.r.e.).

■ Finding no record evidence to support a finding of contract between Anthony and Nixon, we look to the other possible theory upon which the trial court's judgment could be upheld—agency between Anthony and Nobleson. Agency is a consensual relationship between two parties in which one acts on behalf of the other, subject to the other's control. *See Thompson v. Schmitt*, 115 Tex. 53, 274 S.W. 554, 557 (1925). Actual agency may be express or implied from the parties' conduct. *See, e.g., Dallas Heating Co. v. Pardee*, 561 S.W.2d 16, 20 (Tex.Civ.App. 1977, writ ref'd n.r.e.). There is, however, no evidence that Nobleson—through its agent, Bill Noble, or otherwise—acted on behalf of Anthony, subject to Anthony's control or that Anthony and Noble consented to such an arrangement; nor is there evidence of conduct from which such an arrangement could be implied.

■ Neither, in the absence of pleading and proof of alter ego, does the evidence support an implied finding of apparent agency or agency by estoppel which arises when the "alleged principal, either intentionally or by want of ordinary care, induces a third person to believe [the 'apparent' agent] to be his agent." *Bugh v. Word*, 424 S.W.2d 274, 277 (Tex.Civ.App.

1968, writ ref'd n.r.e.). An "owner is estopped to deny the agency where, without repudiating it, he stands by and expressly consents to, or silently acquiesces in, contracts for improvements entered into with a person *who claims to be his agent.*" 57 C.J.S. *Mechanic's Liens* § 59, at 550 (1948) (emphasis added). Nixon offered evidence only that Bill Noble and his wife were sole shareholders in Anthony and that Bill Noble knew of the Nobleson–Nixon contract, having signed it himself on behalf of Nobleson. From this, we may impute Bill Noble's knowledge to Anthony. *See, e.g., Pyramid Drilling Co. v. Howell,* 173 S.W.2d 250, 252 (Tex.Civ.App.1943, writ ref'd). But there is no evidence that Nobleson—acting through its agent, Bill Noble, or otherwise—claimed to be Anthony's agent. Moreover, a claimant is not entitled to a lien on the basis of estoppel where the claimant had notice from the public records that the party with whom it contracted was not an owner. 57 C.J.S. *Mechanic's Liens* § 57, at 548 (1948); *see Union Cent. Life Ins. Co. v. Austin,* 52 S.W.2d 536, 538 (Tex.Civ.App.1932, writ ref'd).

There being no reviewable evidence to support any implied finding upon which the trial court's judgment might be upheld, we now turn to the second prong of the standard of appellate review regarding a "matter of law" challenge—determining, by examining the entire record, whether the contrary proposition is established as a matter of law. *Sterner,* 767 S.W.2d at 690. We conclude that it is. Noble, successor to Anthony, established by unchallenged exhibits that Anthony owned the oil and gas leasehold estate in question and was the mineral property owner at the time in question. Both Anthony Noble and Jerry Nixon testified that there was no express contract between Anthony and Nixon. We conclude the evidence establishes as a matter of law that Nixon is not a "mineral contractor" under § 56.001(2) and is not entitled to a lien under § 56.002. Noble's first point of error is sustained.

In its second point of error, Noble complains that the district court erred in admitting evidence on the defense of alter ego over its objection on the ground that Nixon

failed to plead it. For the reasons stated above, we sustain the point.

The judgment of the trial court is reversed, and judgment is here rendered in part that Nixon's lien affidavit is invalid and any cloud on Noble's title created by the filing of Nixon's lien is removed; the cause is remanded in part for proceedings consistent with this opinion for determination of damages and fees, if any, to which Noble may be entitled.