E.L. & ASSOCIATES, INC., Appellant

v.

Jorge H. PABON, Ruth Pabon, Williams Solis, and Ruthie's 5022, LLC, Appellees

NO. 14-15-00631-CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed May 18, 2017

## OPINION

William J. Boyce, Justice

E.L. & Associates, Inc. ("EL&A") sued two of its former directors and their adult son after EL&A lost a lease for a restaurant it operated and the directors' son opened a nearly identical restaurant in the same location. A jury found that the directors, Jorge H. Pabon and Ruth Pabon, breached their fiduciary duties to EL&A. The jury further found that the Pabons' son, William Solis, assisted in the Pabons' breaches of fiduciary duty. The jury awarded no damages to EL&A.

On appeal, EL&A contends that the jury's zero damages award was the result of the trial court's improper submission of a mitigation instruction as part of the damages question; EL&A contends a mitigation instruction should not have been submitted because there was no evidence supporting any failure to mitigate by EL&A. More specifically, EL&A contends that the only evidence of any potential mitigation involved actions that would have predated its damages. EL&A contends that a party cannot be required to mitigate damages before they occur.

Because we conclude that a party may be required to mitigate damages before those damages occur if the party has knowledge of a breach and the impending damages resulting from that breach, we affirm.

### BACKGROUND

EL&A was formed in 1999 for the purpose of opening up two locations of a Mexican restaurant called "Ruthie's Mexicana." Efrain Lopez was the president of EL&A and the Pabons were officers and directors. Efrain owned 55 percent of EL&A; the Pabons collectively owned the remaining 45 percent. Efrain and the Pabons orally agreed that Efrain would pro-

Paul S. Kirklin, Houston, TX, for Appellant.

Lawrence S. Rothenberg, Jason A. Hanke, Houston, TX, Brent Carpenter, Sugar Land, TX, for Appellee.

Panel consists of Justices Boyce, Busby, and Wise.

vide the startup capital for the restaurants and that the Pabons would be responsible for running the restaurants, including securing the restaurant location leases and serving as guarantors for the leases.

The dispute forming the basis of this lawsuit surrounds the lapse of the lease for the Ruthie's Mexicana Sugar Land location. Jorge Pabon signed a 10-year lease for the Sugar Land location of Ruthie's Mexicana in 1999; that lease identified the tenants as "George and Ruth Pabon DBA Ruthie's Mexicana"[1] and the guarantors as "George and Ruth Pabon." Later that year, Jorge and the Sugar Land landlord amended the lease to change the tenant name to "E. L. and Associates DBA Ruthie's Mexicana." All other lease terms remained the same.

The Pabons opened the restaurants and ran them for the next 10 years. The lease for the Sugar Land location came up for renewal in October 2009. Shortly before the renewal deadline, the Pabons indicated to Efrain and Efrain's son, George Lopez, that they no longer desired to continue the business venture as part of EL&A. To that end, the Pabons sent Efrain a letter 10 days before the lease renewal deadline offering to purchase all outstanding shares in EL&A.

At the time, George was managing Efrain's interest in EL&A on Efrain's behalf. George declined the Pabons' offer to purchase Efrain's interest. Instead, George secured from the landlord a lease renewal form. Jorge allegedly told George he did not want to sign it because Jorge was attempting to negotiate better renewal terms with the landlord. The lease was not renewed before the deadline, but instead continued on a month-to-month basis until February 2011.

During the approximately 16 months that the Sugar Land restaurant was on a month-to-month lease, neither the Pabons nor Efrain (or George on Efrain's behalf) signed a renewal lease for EL&A. George later testified that Jorge repeatedly represented during that time period that he was attempting to negotiate better lease terms.

Evidence was presented that the Pabons and their son, William Solis, began preparations during this period to open a different Mexican restaurant in the same location.[2] Solis filed an assumed name record with the Fort Bend County Clerk the day before the lease expired in October 2009 identifying the address of his business as the same address as the Sugar Land Ruthie's Mexicana, and identifying the assumed business name for the new business as "Ruthie's Mexican Grill." Likewise, Jorge emailed the landlord for the Sugar Land location in March 2010 requesting that a new lease be prepared for Solis's signature for a business called "Ruthie's Mexican Grill."

In August 2010, the Pabons again made an offer to Efrain; this time, they offered to buy Efrain's interest in EL&A or to sell their own interest to him. That same month, Jorge wrote to Efrain and George that the restaurant lease renewals required immediate attention and that "[t]he current circumstances preclude me from signing any personal guarantees on either lease." Jorge further indicated in that letter that "[t]he president of the company

---

1. Jorge Pabon is occasionally identified in various documents as "George Pabon." Likewise, Efrain's son George Lopez (discussed below) is occasionally identified as "Jorge." For clarity, we use "Jorge" to refer to Jorge Pabon and "George" to refer to George Lopez

except when quoting testimony or a document.

2. At the time, Solis was employed as a manager at the Ruthie's Mexicana Sugar Land location.

and majority owner is the one most indicated to contact the landlords and work the appropriate terms and conditions for approval by the corporation."

In December 2010, the Pabons' personal attorney informed the landlord for the Sugar Land restaurant that there was "a majority shareholder involved with significantly more financial involvement [than] the current personal guarantor." The landlord then demanded that Efrain, as the majority shareholder, become the personal guarantor for the new lease, and required a number of personal and financial documents from Efrain. The landlord stated that the lease would terminate in February 2011 if not renewed by Efrain before then.

The Pabons sent Efrain a letter expressing concern about the impending lease termination and again stated that "Efrain as the President of the company and majority owner needs to take care of this situation." Efrain did not produce the requested documents or become the personal guarantor on the lease. Accordingly, the landlord locked the doors of the restaurant on February 28, 2011.

Ruth resigned her position with EL&A on March 1, 2011. On March 15, 2011— approximately two weeks after EL&A was locked out of the restaurant location—Solis signed a new lease for the same location. Jorge resigned his position with EL&A on March 19, 2011. The Pabons signed as guarantors for Solis's lease on April 12, 2011. Shortly thereafter, Solis opened a Mexican restaurant at the former Ruthie's

Mexicana location, calling it "Ruthie's Tex-Mex."

EL&A sued the Pabons in May 2011 and added Solis and Ruthie's 5022, LLC [3] as defendants in early 2012. EL&A originally asserted numerous causes of action against the defendants including fraud, breach of contract, breach of fiduciary duty, and conversion. At the conclusion of trial, EL&A abandoned all causes of action other than its claims that the Pabons breached fiduciary duties owed to EL&A and that Solis and his company assisted in the Pabons' breaches of fiduciary duty. The jury found that the Pabons breached their fiduciary duties to EL&A, and that Solis assisted in the breach.[4] The jury further determined, however, that EL&A suffered no past or future lost profits damages due to the loss of the Sugar Land restaurant. The trial court signed a take-nothing judgment against all defendants on April 24, 2015, and EL&A appealed.

### STANDARD OF REVIEW

The trial court must "submit the questions, instructions, and definitions" that are "raised by the written pleadings and the evidence." Tex. R. Civ. P. 278. A trial court has broad discretion in submitting jury questions. *DeWolf v. Kohler*, 452 S.W.3d 373, 394 (Tex. App.—Houston [14th Dist.] 2014, no pet.). We review alleged charge errors for abuse of discretion.[5] *Id.*

### ANALYSIS

EL&A contends on appeal that the jury's zero damages finding resulted from

---

3. Ruthie's 5022, LLC was formed by Solis to operate Ruthie's Tex-Mex.

4. No question was submitted to the jury as to whether Ruthie's 5022, LLC assisted in any breach of fiduciary duty.

5. The parties disagree about the proper standard for determining harm from charge error involving the allegedly improper submission of a mitigation instruction as a part of the damages question. Because we determine below that the submission of a mitigation element with the damages question was not error, we need not address harm.

the erroneous submission of a mitigation element in the damages question. Question No. 4 of the jury charge asked, in relevant part:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate E.L. & Associates, Inc. for its damages, if any, that were proximately caused by [the Pabons' breaches of fiduciary duty]?
>
> Do not include in your answer any amount that you find E.L. & Associates, Inc. could have avoided by the exercise of reasonable care.

The question asked the jury to distinguish between past and future lost profits resulting from the loss of the Sugar Land restaurant. EL&A objected to the charge as follows:

> [EL&A]: We object to the mitigation instruction on [sic] Question No. 4.
>
> THE COURT: Why?
>
> [EL&A]: There is no evidence that we failed to mitigate. There is no basis that the jury could find that we didn't mitigate.
>
> THE COURT: Response.
>
> [Pabons' Attorney]: Judge ... there is adequate evidence of mitigation opportunities that they failed to take.
>
> [Solis's Attorney]: [George Lopez] could have signed the lease in 2010 without a guarantee. Efrain could have provided documents in a three or four month period between December and March. January—
>
> THE COURT: Okay. The objection is overruled. It will stay in.

During deliberations, the jury sent a question asking what time period was referenced in Question No. 4, specifically in reference to the period concerning EL&A's past lost profits. After conferring with counsel and securing all parties' agreement, the trial court indicated that it would instruct the jury that the period for calculation of past lost profits ran from "March 15, 2011 through the present." The jury returned a verdict finding the Pabons liable for breaching their fiduciary duties to EL&A but awarded $0 in damages for both past and future lost profits resulting from the loss of the Sugar Land restaurant.

EL&A now contends that no evidence supported the trial court's inclusion of the mitigation instruction in Question No. 4 because a duty to mitigate damages cannot arise before the damages occur.

## I. Mitigation of Damages

■ The doctrine of mitigation of damages, sometimes referred to as the doctrine of avoidable consequences, requires an injured party to use reasonable efforts to avoid or prevent losses. *Pulaski Bank & Trust Co. v. Tex. Am. Bank/Fort Worth, N.A.*, 759 S.W.2d 723, 735 (Tex. App.—Dallas 1988, writ denied). In the context of a breach of contract case, the doctrine has been stated as follows: " 'Where a party is entitled to the benefits of a contract and can save himself from the damages resulting from its breach at a trifling expense or with reasonable exertions, it is his duty to incur such expense and make such exertions.' " *See Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 426 (Tex. 1995) (quoting *Walker v. Salt Flat Water Co.*, 128 Tex. 140, 96 S.W.2d 231, 232 (1936)).

The doctrine has been applied in breach of contract and tort cases. *See Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 858 (Tex. 1999) (applying doctrine in DTPA case); *Pulaski*, 759 S.W.2d at 735 (noting that "Texas has applied the mitigation doctrine in both tort and breach of contract cases"); *see also* Restatement (Second) of Torts § 918 (Am. Law Inst. 1979) (stating general rule that "one injured by the tort

of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort," and noting exception to the rule that recovery of damages is not prohibited where "the tortfeasor intended the harm or was aware of it and was recklessly disregardful of it, unless the injured person with knowledge of the danger of the harm intentionally or heedlessly failed to protect his own interests").

## II. When Does the Duty to Mitigate Arise?

EL&A contends that a duty to mitigate damages cannot arise before the damages occur; it further contends that the damages accrued on March 15, 2011, when Solis signed his own lease for the Sugar Land location.[6] Accordingly, EL&A argues that any evidence of a failure by Efrain or George to sign a new lease on behalf of EL&A before March 15, 2011, cannot be evidence of a failure to mitigate damages occurring after that date. EL&A further argues that the only suggested mitigation opportunity available to EL&A after March 15, 2011—opening a new restaurant at another location—was not reasonably required of EL&A.

For their part, appellees appear to agree that it was their burden to produce evidence of potential mitigation EL&A could have undertaken after March 15, 2011. They contend they satisfied that burden by presenting evidence that it would not have required substantial effort for EL&A to open a new restaurant.

Both sides conflate the date upon which damages began with the date EL&A became duty-bound to mitigate those damages. The trial court and the parties

agreed to instruct the jury that the beginning date for EL&A's damages in the form of past lost profits was March 15, 2011. But the jury was not instructed that it should award only damages that could have been avoided by the exercise of reasonable care through actions taken by EL&A on or after March 15, 2011.

EL&A is incorrect in its assertion that mitigation of damages cannot occur before the damages themselves occur. EL&A relies on *Nabors Well Services, Ltd. v. Romero*, 456 S.W.3d 553 (Tex. 2015), for the proposition that any action taken before damages occur does not constitute a failure to mitigate, but is only evidence of proportionate responsibility:

A plaintiff's failure to mitigate his damages traditionally occurs post-occurrence and, as noted in *Kerby [v. Abilene Christian College*, 503 S.W.2d 526 (Tex. 1974) ], the doctrine does not readily translate in the pre-occurrence context. 503 S.W.2d at 528 (noting "conceptual difficulty of applying the mitigation[-]of[-]damages concept to Plaintiff's conduct antedating the negligence of the Defendant"). That distinction remains. A plaintiff's post-occurrence failure to mitigate his damages operates as a reduction of his damages award and is not considered in the responsibility apportionment. It is only the plaintiff's *pre-occurrence*, injury-causing conduct that should be considered in the responsibility apportionment.

*Id.* at 564 (first alteration added).

EL&A construes "pre-occurrence" to mean "pre-damages." A closer reading of *Nabors* reveals that the term "occurrence" refers not to the damages, but to the conduct or event that might result in dam-

---

**6.** EL&A does not explain why its "damages began on March 15, 2011, at the earliest," though presumably it chose this date because

Solis's signing of a lease foreclosed any possibility of EL&A renewing its own lease for that restaurant location.

ages. *See id.* at 560 (noting that doctrine of mitigation of damages is "typically applied to a post-occurrence action, such as when a plaintiff fails to follow his doctor's treatment instructions"); *id.* at 562 (distinguishing harm for which recovery of damages is sought, such as personal injury or death, from the underlying occurrence, such as a car accident). Contrary to EL&A's assertion, *Nabors* does not hold that mitigation cannot occur pre-*damages*, only that it cannot generally occur before the damage-causing act. *See id.* at 564.

It is, admittedly, uncommon for a situation to present itself in which a party can mitigate damages before they occur. *See id.* at 560 ("Courts were accustomed to instructing juries to consider a plaintiff's failure to mitigate when awarding damages, but the doctrine proved awkward when applied to *pre*-occurrence actions—how can one mitigate damages that have not yet occurred?") (emphasis in original). This is because the injury-causing occurrence typically results in immediate injuries. But this case presents a unique situation because it involves a breach of fiduciary duty, which may not result in immediate damages.

■ It is not the damages themselves that trigger the duty to mitigate, but knowledge by the non-breaching party of the breach that ultimately causes the damages. *See Pulaski Bank & Trust Co.*, 759 S.W.2d at 735 ("The doctrine [of avoidable consequences, or mitigation of damages,] is applicable only if the victim of the wrongdoer's act has knowledge of the fact which makes avoidance of the consequences necessary, and if the damages can be avoided with only slight expense and reasonable effort."); *Otto Goedecke, Inc. v. Henderson*, 388 S.W.2d 728, 730 (Tex. Civ. App.—Amarillo 1965, writ ref'd n.r.e.) ("The duty to mitigate damages does not come into play until the injured party has notice of play until the injured party has notice of

the breach of contract."); *see also Trinity Universal Ins. Co. v. Fuller*, 524 S.W.2d 335, 338 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.) ("Here, there is no evidence that Trinity knew that the coverage had not been reduced by Fuller. In fact, Fuller himself testified that he never advised Trinity that he had not obtained the insured's signature on the reduction endorsement, or that he would not do so. Without such knowledge, Trinity had no duty to avoid the consequences by reducing or cancelling the policy.").

The question before us, then, is what the breach of fiduciary duty was, and when EL&A had knowledge of the breach.

### III. When Did EL&A's Duty to Mitigate Arise Under these Facts?

Questions 1 and 2 in the jury charge were submitted broad-form and identified five different ways in which the jury could find that the Pabons breached fiduciary duties owed to EL&A:

- if the transactions in question were not fair and equitable to EL&A;

- if the Pabons did not make reasonable use of the confidence that EL&A placed in them;

- if the Pabons failed to act in the utmost good faith and exercise the most scrupulous honesty toward EL&A;

- if the Pabons placed their own interests before EL&A's, used the advantage of their position to gain a benefit for themselves at the expense of EL&A, or placed themselves in a position where their self-interest might conflict with their obligations as a fiduciary;

- if the Pabons failed to fully and fairly disclose all important information to EL&A concerning the transactions.

The jury was not required to identify the specific method of breach; it was required only to answer "Yes" or "No" that the Pabons had breached their duty in one of the ways described above.

As discussed in detail in the background section above, there is sufficient evidence that a breach of fiduciary duty occurred when (1) the Pabons, through their attorney, disclosed confidential information to the landlord regarding Efrain's status as the majority shareholder of EL&A; or (2) the Pabons placed their own interests before those of EL&A by not diligently seeking renewal of the lease on behalf of EL&A between October 2009 and February 2011; or (3) the Pabons placed themselves in a position where their self-interest might conflict with their obligations as fiduciaries to EL&A by contacting the Sugar Land landlord in March 2010 and requesting that a new lease be prepared in their son's name.

Assuming the jury based its breach of fiduciary duty finding on any of those potential breaches, the jury properly could have considered evidence of Efrain or George's failure to mitigate by signing a new lease if there was evidence that they were aware of the breach before the Pabons' lease was signed on March 15, 2011. To that end, the record contains evidence that EL&A repeatedly was made aware throughout 2009 and 2010 that the Pabons were refusing to renew and provide a guaranty for the lease on EL&A's behalf. The record also contains evidence that EL&A was made aware at least as early as January 2011 that the Pabons had disclosed Efrain's status as the majority shareholder of EL&A. Based on this evidence, the record before us could support a jury finding that EL&A failed to reasonably mitigate its damages—its loss of the restaurant location—by having Efrain sign and become guarantor of a lease after learning of the Pabons' breaches but before (1) the month-to-month lease was terminated in February 2011; or (2) Solis signed the new lease for the same location on March 15, 2011. Accordingly, the trial court did not err by including a mitigation instruction in the damages question.

EL&A argues that requiring EL&A to mitigate by having someone other than the Pabons sign and serve as guarantors on its lease impermissibly would require EL&A to sacrifice its contractual right to have the Pabons do so. *See Dynacq Healthcare, Inc. v. Seth*, No. 01-06-00188-CV, 2007 WL 2005023, at *6 (Tex. App.—Houston [1st Dist.] July 12, 2007, pet. denied) (mem. op.) ("The duty to mitigate, however, does not require an aggrieved party to accede to a wrongful demand by the wrongdoer even if accession would minimize damages.... Put another way, a party's duty to mitigate damages does not require that it sacrifice its contractual rights.").

EL&A misconstrues the statement that "a party's duty to mitigate damages does not require that it sacrifice its contractual rights." This means a party may not be required to sacrifice its entitlement to pursue its contractual rights. *See, e.g., Gunn Infiniti*, 996 S.W.2d at 858 ("The duty to mitigate has not generally included a duty that the claimant relinquish its right to have its claims heard and resolved by a court. In breach of contract cases, it is well-settled that a plaintiff is not required to accept offers from the breaching party if they are 'conditioned on surrender by the injured party of his claim for breach.'"); *Tex. Gas Expl. Corp. v. Broughton Offshore Ltd. II*, 790 S.W.2d 781, 789 (Tex. App.—Houston [14th Dist.] 1990, no writ) ("Mr. Broughton's testimony that Moore told him Broughton was welcome to bid only if it agreed not to pursue its contractual rights was not disputed. Broughton's duty to mitigate damages did

not require that it sacrifice its contractual rights."). Had Efrain signed a new lease for EL&A, no contractual rights would have been sacrificed; EL&A would have retained its right to sue for damages under its alleged oral contract with the Pabons. EL&A nevertheless was required to mitigate its damages if it reasonably could do so. *See Am. Heritage, Inc. v. Nevada Gold & Casino, Inc.*, 259 S.W.3d 816, 824 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("Here, because American Heritage repudiated the contract, Nevada Gold was entitled to mitigate its damages. In fact, it had the burden to do so.").

## CONCLUSION

Having concluded that the inclusion of a mitigation instruction in the damages question was not error, we affirm the trial court's judgment.