# NO. 12-20-00207-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MARK BENTON, INDIVIDUALLY AND D/B/A MEBCO CONTRACTING, APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *CONTRACTOR'S SUPPLIES, INC., APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Mark Benton, individually and D/B/A MEBCO Contracting appeals the trial court's order granting summary judgment in favor of Contractor's Supplies, Inc. In what we construe as two issues, Benton argues that the trial court erred in granting summary judgment in favor of Contractor's because he argues material issues of fact remain with respect to Contractor's breach of contract claim and Benton's affirmative defenses. We affirm.

## BACKGROUND

This case arises from a dispute between a subcontractor and a materials supplier over payment for concrete and other materials used in the construction of the Pinnacle Senior Living of Lufkin, an assisted living facility located in Lufkin, Texas. The facility is licensed as an assisted living community with roughly eighty beds and sixty thousand square feet of indoor space.

Benton is a self-employed contractor who works in the concrete business. He was awarded a bid by the general contractor, Regent Construction, to furnish concrete work and framing on the Pinnacle project. Benton entered into a detailed subcontractor agreement with Regent on August 1, 2017 to complete the concrete and framing work for $890,570.00.

1

Benton began work on the project in August 2017. Contractor's sold premixed concrete, construction supplies and other materials to Benton for the Pinnacle project. During construction, a dispute arose between Regent and Benton over problems and delays in the concrete work and framing on the project. Subsequently, Regent hired another contractor to complete the concrete work and framing and charged Benton for the new subcontractor's work. Benton stopped work on the Pinnacle project in December 2017. Contractor's provided Benton with $389,211.66 worth of construction materials and concrete from August to December.

Benton paid Contractor's $5,774.71 at the outset of the work, but thereafter ceased paying for the materials. In November and December of 2017, Regent directly paid Contractor's $74,527.64 for the materials. In January 2018, Contractor's filed statutory liens for materials supplied in October ($229,084.14), November ($54,715.00), and December ($3,307.79) in an attempt to collect the outstanding balance for the materials. However, the lien for the materials supplied in October 2017 was not timely filed. Additionally, the lien filed for the materials supplied in November excluded an invoice for $21,801.55. In May of 2018, Regent paid Contractor's $58,023.62 to release the valid liens. Thereafter, Regent advised Contractor's that all the funds for the concrete portion of the Pinnacle project had been expended.

Contractor's then filed suit against Benton for breach of contract and unjust enrichment to recover the remaining $250,889.69 it was owed for the materials. Benton answered and asserted multiple defenses including modification, estoppel/quasi-estoppel, accord and satisfaction/novation, and failure to mitigate damages.

Subsequently, Contractor's filed a traditional motion for summary judgment and no-evidence motion for summary judgment with respect to Benton's affirmative defenses. The trial court granted the motion for summary judgment and signed a final judgment awarding damages and attorney's fees to Contractor's. This appeal followed.

## SUMMARY JUDGMENT

In his first issue, Benton argues that the trial court erred in granting summary judgment in favor of Contractor's because Contractor's did not carry its burden to establish entitlement to summary judgment as a matter of law, as it failed to prove the existence of a valid contract.

2

In his second issue, Benton argues that the trial court erred in granting summary judgment in favor of Contractor's because the record establishes disputed issues of fact with respect to Benton's affirmative defenses.

**Standard of Review and Applicable Law**

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex. 2002). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

In a no evidence summary judgment context, if the non-movant failed to produce more than a scintilla of evidence under the standards of Rule 166a(i), then there is no need to analyze whether the movant's summary-judgment proof satisfied the less stringent burden set forth for traditional summary judgment under Rule 166a(c). TEX. R. CIV. P. 166a(c) & (d); *E. Hill Marine, Inc. v. Rinker Boat Co.,* 229 S.W.3d 813, 816 (Tex. App.—Fort Worth 2007, pet. denied). That is why, typically, when a party files a hybrid summary-judgment motion on both no-evidence and traditional grounds, we first review the trial court's judgment under the no-evidence standard of review. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex. 2004); *All Am. Tel., Inc. v. USLD Commc'ns, Inc.,* 291 S.W.3d 518, 526 (Tex. App.—Fort Worth 2009, pet. denied); *E. Hill Marine,* 229 S.W.3d at 816. However, this rule is not absolute. *See Dunn*

***v. Clairmont Tyler, LP***, 271 S.W.3d 867, 870 (Tex. App.—Tyler 2008, no pet.). Affirmative defenses, as opposed to defendant's denials, are the propositions which a defendant may assert and interpose to defeat a prima facie case made by the plaintiff. ***Hays Consol. Indep. Sch. Dist. v. Valero Transmission Co.,*** 645 S.W.2d 542, 546 (Tex. App.—Austin 1982, writ ref'd n.r.e.). They open the way for the defendant to introduce evidence which does not tend to rebut the factual propositions asserted in the plaintiff's case, but seek to establish an independent reason why the plaintiff should not recover. ***Id.***

The elements of a breach of contract claim are (1) the existence of a valid contract between plaintiff and defendant, (2) the plaintiff's performance or tender of performance, (3) the defendant's breach of the contract, and (4) the plaintiff's damage as a result of the breach. ***Prime Prods., Inc. v. S.S.I. Plastics, Inc.***, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). The elements of a valid contract are (1) an offer, (2) acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. ***Id.***

**Traditional Summary Judgment**

Contractor's moved for traditional summary judgment on its breach of contract claim against Benton, and moved for no evidence summary judgment on Benton's affirmative defenses. For summary judgment on Contractor's breach of contract claim to have been properly granted, the trial court had to find that Contractor's established each element of its breach of contract claim as a matter of law by competent summary judgment evidence. *See **Willrich***, 28 S.W.3d at 23. Further, as explained above, Benton's affirmative defenses are only relevant if Contractor's established its claim for breach of contract. *See **Hays Consol. Indep. Sch. Dist.,*** 645 S.W.2d at 546. Thus, we will review Contractor's traditional motion for summary judgment first. *Cf. **Dunn***, 271 S.W.3d at 870.

Benton argues that Contractor's did not conclusively establish that it had a contract with Benton. He argues that

> The only agreement between the [p]arties, if any, was oral, and the loose terms were based upon a general course of dealing between the parties.
> ...
> Defining the specific terms of the contract or contracts—which [Contractor's] has not done conclusively either in its pleadings or through its summary judgment motions—is a fact issue in itself which should be resolved by a jury.
> ...

> [Contractor's] points to "hundreds of receipts and invoices" that were sent to [Benton] as "proving the existence of the contract" and tries to overwhelm the record with such evidence. However, invoices are not contracts, [Contractor's] has not alleged that the invoices were an agreement themselves or integrated into any agreement.

Benton points out that, although the invoices contain language stating "NET AMOUNT DUE IN 30 DAYS," Contractor's made no attempt to enforce or collect after thirty days and further, the evidence demonstrates that the invoices were sent directly from Contractor's to Regent beginning in September 2017.

The elements of a contract are the same whether the contract is written or oral. *Critchfield v. Smith*, 151 S.W.3d 225, 233 (Tex. App.—Tyler 2004, pet. denied). The existence of an oral contract may be proved by circumstantial as well as direct evidence. *Harris v. Balderas*, 27 S.W.3d 71, 77 (Tex. App.—San Antonio 2000, pet. denied). We look to the communications between the parties and to the acts and circumstances surrounding those communications. *Id.*

Benton argues that the acts and circumstances indicate that his communication with Shawn Kaemmerling in late 2017 confirmed this was a "direct pay" job under the parties' course of dealing and that Contractor's had an agreement with Regent that Regent would pay Contractor's directly for materials on the project. Kaemmerling is employed by Contractor's as the plant manager at the Lufkin plant. Benton testified in his deposition that he had conversations with Kaemmerling during the project, and Kaemmerling told Benton that Contractor's had an agreement with Regent for Regent to pay Contractor's directly for the materials used on the Pinnacle project. While Benton acknowledges that Kaemmerling denies making this representation, he argues that the documentary evidence supports his testimony. Benton points to invoices he sent directly to Regent and the checks issued by Regent to Contractor's, together with the fact that Benton stopped paying Contractor's after the outset of the job and Contractor's made no demands for payment until 2018. Benton argues that these circumstances establish a disputed issue of material fact and therefore, summary judgment in favor of Contractor's was improper.

In our de novo review of the trial court's summary judgment, we consider all the evidence in the light most favorable to Benton, crediting evidence favorable to him if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc.*, 206 S.W.3d at 582. The evidence raises a genuine issue of fact if reasonable and

fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire*, 236 S.W.3d at 755. Contractor's motion for summary judgment stated as follows:

> Regent...was the general contractor on the construction of Pinnacle Senior Living in Lufkin, Texas. On August 6, 2017, Regent hired [Benton] as a subcontractor to provide concrete services for the construction of Pinnacle Senior Living. On August 23, 2017, [Benton] ordered premixed concrete, construction supplies, and other materials from [Contractor's]. [Contractor's] provided all materials as requested, in a timely and prompt manner. [Contractor's] provided services to [Benton] starting on August 23, 2017 until December 12, 2017. During this time period, [Contractor's] provided $389,211.66 worth of construction materials and concrete to [Benton].
>
> Under the terms of their oral agreement, [Benton] was to pay [Contractor's] within 30 days of receiving the concrete and supplies provided. Originally, [Benton] paid the first $5,774.71 owed to [Contractor's] under the contract. However, after paying the $5,774.71, [Benton] never directly paid [Contractor's] again for the concrete and supplies for the Pinnacle Senior Living job. Rather, Regent issued checks payable to [Contractor's] in the amounts of $17,439.97 and $57,987.67 for concrete supplied in August and September 2017. These checks were given to [Benton] who later forwarded them to [Contractor's].

(internal citations omitted). In response to this motion, Benton stated as follows:

> Regent Construction Group, LLC ("Regent") was the general contractor on the construction of Pinnacle Senior Living Center ("Project") in Lufkin, Angelina County, Texas. On August 6, 2017, Regent hired [Benton] as a subcontractor to provide concrete services for the construction of Pinnacle Senior Living Center. [Benton] ordered premixed concrete, construction supplies, and other materials from Plaintiff, Contractor's Supplies, Inc. [Contractor's] provided an accounting of their invoices for supplies with their petition.
>
> [Benton] paid the first $5,774.71 owed to [Contractor's] under the invoices as indicated on Ex N. Thereafter, [Contractor's] and [Benton] modified any agreement for payment of the concrete and concrete supplies in that [Contractor's] would start receiving direct payment from Regent's.
>
> Further, after the first draw, [Benton] paid for the concrete as indicated on Ex. N, however, after that [Contractor's] made a direct payment agreement with Regent's according to Shawn Kaemmerling, an employee of [Contractor's]. [Benton] made no further payments, since he relied on what Mr. Kaemmerling had told him and believed he was no longer responsible for the payment of the concrete and the concrete supplies. Further, [Contractor's] accounting shows three payments by Regent to [Contractor's] as payment for concrete and supplies.

(internal citations omitted). We agree with Contractor's that Benton conceded the existence of a valid contract between the parties. Moreover, as previously discussed, the first element of a breach of contract claim is the existence of a valid contract. *Prime Prods., Inc.*, 97 S.W.3d at 636. It is clear from both parties' statement of facts in their motions and responses that

Contractor's provided materials to Benton for the Pinnacle project and Benton accepted and partially paid for the materials. Benton argues that his alleged communications with Kaemmerling, in addition to Regent's direct payments to Contractor's and Contractor's delay in collecting from Benton creates a question of material fact with respect to whether the parties had a meeting of the minds on the essential terms. We disagree.

Whether the parties had a meeting of the minds must be resolved utilizing an objective standard; we consider the meaning reasonably conveyed by what the parties said and did, and not on their subjective state of mind. *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 73 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). "We view the conduct and circumstances surrounding the transaction from a reasonable person's interpretation at that particular point in time." *Id.* A contract also must be "sufficiently definite to confirm that both parties actually intended to be contractually bound." *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016). "To be enforceable, a contract must address all of its essential and material terms with 'a reasonable degree of certainty and definiteness.'" *Id.* (quoting *Pace Corp. v. Jackson*, 284 S.W.2d 340, 345 (Tex. 1955)). Whether a particular contractual term is essential, or material is a question of law. *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 142 (Tex. App.—Dallas 2012, no pet.).

Benton does not specifically identify which essential term is missing from the oral contract, but we assume from the context that he is referring to whether he, Regent, or someone else would ultimately be responsible for payment of the supplies provided by Contractor's. Looking to the communications between the parties and the acts and circumstances surrounding those communications at the time the parties entered into the oral contract, we determine that a meeting of the minds on the essential terms occurred. *Cf. Bowles Const. Co. v. Bridwell*, No. 11-02-00079-CV, 2002 WL 32344569, at *2 (Tex. App.—Eastland Nov. 7, 2002, no pet.) (op.) ("The testimony concerning the communications and circumstances existing *at the time* the oral contract was entered supports a finding that the contract related to dirt only.") (emphasis added). Benton's evidence, including his communications with Kaemmerling, Regent's payments to Contractor's, and Contractor's delay in collecting from Benton are all communications, acts, or circumstances that arose after the initial contract was formed. As discussed above, Benton ordered premixed concrete and other supplies, Contractor's delivered the supplies, and Benton initially paid for the supplies. Viewing the conduct and circumstances of the parties at the time

7

Benton ordered the supplies, from a reasonable person's objective point of view, it is clear that Benton agreed to pay for the supplies. *See **Parker Drilling Co.**,* 316 S.W.3d at 73. Therefore, we overrule his first issue.

**Affirmative Defenses**

In general, a moving plaintiff is not under any obligation to negate a defendant's pleaded affirmative defenses. ***Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.***, 106 S.W.3d 118, 124 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). Rather, an affirmative defense only prevents the granting of summary judgment if each element of the affirmative defense is supported by summary judgment evidence**.** ***Kirby Expl. Co. v. Mitchell Energy Corp.***, 701 S.W.2d 922, 926 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). If the defendant moves for summary judgment on his affirmative defense, he bears the burden to conclusively prove each element of the affirmative defense to be entitled to summary judgment. *See **Am. Tobacco Co., Inc. v. Grinnell***, 951 S.W.2d 420, 425 (Tex. 1997) (defendant carried burden of conclusively proving pre-emption defense in its summary judgment motion). However, when, as here, a defendant only seeks to survive summary judgment based on an affirmative defense, he must do no more than raise a fact issue as to each element of the defense. *See **Moore Burger, Inc. v. Phillips Petroleum Co.***, 492 S.W.2d 934, 937 (Tex. 1972).

Benton argues that the trial court erred in granting summary judgment in favor of Contractor's because he raised a fact issue as to each element of the affirmative defenses of modification, estoppel/quasi-estoppel, accord and satisfaction/novation, and the failure to mitigate damages. Benton relies on Kaemmerling's alleged representations to argue that he established a fact issue with respect to his modification, estoppel, and accord and satisfaction defenses. Benton relies on Contractor's failure to timely file statutory liens for the materials it supplied to argue it created a fact issue with respect to his failure to mitigate damages defense.

*Modification*

Contract modification is an affirmative defense. ***Arthur J. Gallagher & Co. v. Dieterich***, 270 S.W.3d 695, 701 (Tex. App.—Dallas 2008, no pet.). Modification of a contract is some change in an original agreement that introduces a new or different element into the details of the contract but leaves its general purpose undisturbed. ***In re F.C. Holdings, Inc.***, 349 S.W.3d 811, 815 (Tex. App.—Tyler 2011, no pet.).

8

Benton argues that "there is evidence of a modification of the agreement to direct pay by Regent Construction." In support of this argument, he cites to his own deposition testimony:

Benton: And I discussed that with the plant manager, Shawn Kaemmerling, after we finally got our first payment. I paid them that first month that I had drawn on. And beyond that I think Shawn had called Regent, Shawn or someone else had called Regent, and they had discussed being paid directly. And from that point on they started sending checks to Contractor's Supplies.

Counsel: All right. So it's your recollection that after the first check that you received – first progress payment and you paid Contractor's Supplies, after that Regency (sic) was paying Contractor's Supplies directly?

Benton: Correct, according to Shawn Kaemmerling, who is the manager at Contractor's Supplies.

Counsel: Okay. That's what he told you?

Benton: Shawn and I would have lunch nearly every month and discuss this project because it was late in payment. And you have time guidelines that fall on the 15th of the month, as far as filing a notice of intent to lien or a notice of filing a lien.
And I started prompting Shawn to make sure that he filed his notices of intent on time, on the 13th or 14th of every month. And on the second draw Shawn told me that he had – he had received a check from them and we had already discussed that that would be all right with me if they paid him direct and I had told him it was.
And he told me, "I received a check from them. They're going to pay. It's not going to be a problem." And so he didn't seem worried about it.

...

Counsel: Is it your understanding from talking with Shawn Kaemmerling that going forward from November on they were supposed to be paid directly by Regent?

Benton: Shawn told me he had discussed with Regent that they were going to pay them. I think that was his words almost verbatim. And he wasn't worried about it. And as far as I was concerned, I was done with paying these. They were paying for it, so –

...

Counsel: All right. Did you ever see a written agreement that reflects what you testified to; that Regent agreed to pay Contractor's Supplies directly for the concrete?

Benton: No, I did not.

Counsel: Okay.

Benton: I had Shawn Kaemmerling's word that he called them and they were paying Contractor's Supplies.

In short, Benton testified that Kaemmerling told him that Contractor's contacted Regent and Regent had agreed to pay Contractor's directly. However, Kaemmerling's statements do not reflect an agreement between Benton and Contractor's to discharge Benton's obligation to pay

9

for the materials he ordered in favor of collecting directly from Regent. Kaemmerling's alleged statements only indicate that Contractor's successfully attempted to collect some of the money it was owed from Regent directly. Nothing in Kaemmerling's alleged statements, if true, indicate an intent on behalf of the evidence in Contractor's to discharge Benton from his obligation to pay for the materials. Thus, viewing the light most favorable to Benton, we must still conclude that the trial court correctly found that he failed to produce more than a scintilla of evidence on his affirmative defense of modification. *See* TEX. R. CIV. P. 166a(i); ***Johnson***, 73 S.W.3d at 206–08.

### *Quasi-Estoppel*[1]

Quasi-estoppel is an affirmative defense that precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. ***Lindley v. McKnight***, 349 S.W.3d 113, 131 (Tex. App.—Fort Worth 2011, no pet.). The defense applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced or from which he accepted a benefit. ***Id.*** Thus, quasi-estoppel forbids a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects. ***Id.***

Benton argues that

> [He] relied on the representation made to him by Shawn Kaemmerling related to receipt of payment and the manner that Contractor's Supplies, Inc. would be paid on the project. These facts, at a minimum, provide summary judgment evidence that under Texas Law Contractor's Supplies should be estopped from seeking payment From Mr. Benton instead of Regent.
>
> ...
>
> Here, Contractor's Supplies should be estopped from seeking to recover the remaining balance owed from Mr. Benton after previously taking the position that general contractor Regent Construction would pay for concrete directly and communicating that position to Mr. Benton. [Benton] has presented evidence (1) that Contractor's Supplies accepted a benefit under a transaction—in that it began accepting payments directly from general contractor Regent Construction; and (2) also that position was inconsistent with the initial arrangement whereby Mr. Benton paid for Contractor's Supplies' invoices himself. (3) It is unconscionable for Contractor's Supplies to remain silent on the outstanding amounts for roughly a year and pursue litigation against Mr. Benton after representing an agreement for direct payment from Regent Construction, particularly when Mr. Benton had already suffered a significant loss for the balance of the Project.

---

[1] Benton entitled this section of his brief "estoppel/quasi-estoppel" but only argued quasi estoppel. Contractor's recognizes this fact in its brief and responded to Benton's quasi-estoppel arguments. In reply, Benton countered Contractor's quasi-estoppel arguments, but did not argue estoppel. Therefore, we only consider quasi-estoppel. *See* TEX. R. APP. P. 38.1 (i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

We disagree. *Cf.* *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000) (plaintiffs' initial acceptance of lesser portion of settlement not inconsistent with later assertion that they were entitled to more).

As stated above, Contractor's sought and recovered payment directly from Regent for some of the supplies it provided to Benton. However, none of the facts Benton alleges, even if taken as true, would demonstrate that Contractor's took a position inconsistent with the initial contract. Simply put, Contractor's attempt to recover directly from Regent, at Benton's suggestion, is not inconsistent with its original contract with Benton. Moreover, the doctrine of quasi-estoppel forbids a party from accepting the benefits of a transaction and subsequently taking an inconsistent position to avoid corresponding obligations or effects. *McKnight*, 349 S.W.3d at 131. Benton has not argued nor does the evidence disclose that Contractor's accepted payments from Regent to avoid a corresponding obligation or effect, therefore the doctrine is inapplicable. *See id.* Additionally, Benton failed to offer authority to support his contention that it is unconscionable for Contractor's to remain silent on the outstanding amounts for roughly a year and pursue litigation against Benton after Kaemmerling represented to Benton that there was a direct pay arrangement between Contractor's and Regent. *See* TEX. R. APP. P. 38.1(i). Nor is this Court aware of any authority that would support such a contention. For the above reasons, viewing the evidence in the light most favorable to Benton, we conclude that the trial court did not err in finding that Benton failed to produce more than a scintilla of evidence on his affirmative defense of quasi-estoppel. *See* TEX. R. CIV. P. 166a(i); *Johnson*, 73 S.W.3d at 206–08.

### *Accord and Satisfaction/Novation*

An "accord" is a new contract to discharge an existing obligation. *Honeycutt v. Billingsley*, 992 S.W.2d 570, 576 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (citing *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex. 1969); *Bueckner v. Hamel*, 886 S.W.2d 368, 372 (Tex. App.—Houston [1st Dist.] 1994, writ denied)). "Satisfaction" is the performance of the new contract. *Billingsley*, 992 S.W.2d at 576 (citing *City of Houston v. First City*, 827 S.W.2d 462, 472 (Tex. App.—Houston [1st Dist.] 1992, writ denied)). In the new contract: (1) the parties agree to discharge the existing obligation; (2) the parties agree that one party will perform and the other will accept something different from what each expected from the existing obligation; (3) the parties unmistakably communicate that the different performance

11

will discharge the existing obligation; (4) the agreement to discharge the existing obligation is plain, definite, certain, clear, full, explicit, and not susceptible of any other interpretation; and (5) the parties' agreement must be accompanied by acts and declarations that the creditor is "bound to understand." *Billingsley*, 992 S.W.2d at 576 (citing *Jenkins*, 449 S.W.2d at 455).

An accord and satisfaction may work a novation. *Billingsley*, 992 S.W.2d at 576. In an accord and satisfaction, it is generally the performance of the new obligation, and not the obligation itself, that is considered a novation. *Id.* (citing *DoAll Dallas Co. v. Trinity Nat'l Bank*, 498 S.W.2d 396, 400 (Tex. Civ. App.—Texarkana 1973, writ ref'd n.r.e.)). An agreement that modifies an existing obligation will result in both an accord and satisfaction and a novation if the parties intended to extinguish the existing obligation. *Billingsley*, 992 S.W.2d at 576.

Thus, the common requirement under both novation and accord and satisfaction is that the new contract must extinguish or excuse the duty to perform the existing obligation. *Id.* Under either theory, the parties must intend to release the other from a prior obligation and to assume a new one. *Id.* Because the same element of both defenses (i.e., whether there was an extinguishment of prior obligations) is at issue in this case, we will discuss novation and accord and satisfaction together.

Benton argues that the summary judgment evidence related to his communications with Kaemmerling create a genuine issue of material fact as to whether there was an accord and satisfaction/novation. According to Benton, "[t]he new arrangement consummated by an oral agreement constitutes the modification of an existing agreement that extinguishes the existing obligation." As previously discussed, viewing the evidence in the light most favorable to Benton, the alleged statements made by Kaemmerling did not indicate that Contractor's was extinguishing Benton's obligation to pay for the materials he ordered. If true, Kaemmerling's statements to Benton merely indicated that Contractor's would try to collect the money it was owed directly from Regent, not that Contractor's would no longer attempt to collect the monies it was owed by Benton. Thus, we conclude that the trial court correctly found that Benton failed to produce more than a scintilla of evidence on its affirmative defense of accord and satisfaction/novation. *See* TEX. R. CIV. P. 166a(i); *Johnson*, 73 S.W.3d at 206–08.

### Failure to Mitigate Damages

The doctrine of mitigation of damages, sometimes referred to as the doctrine of avoidable consequences, requires an injured party to use reasonable efforts to avoid or prevent losses. *E.L.*

***& Assocs. v. Pabon***, 525 S.W.3d 764, 768 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing ***Pulaski Bank & Trust Co. v. Tex. Am. Bank/Fort Worth, N.A.***, 759 S.W.2d 723, 735 (Tex. App.—Dallas 1988, writ denied)). In the context of a breach of contract case, the doctrine has been stated as follows: "Where a party is entitled to the benefits of a contract and can save himself from the damages resulting from its breach at a trifling expense or with reasonable exertions, it is his duty to incur such expense and make such exertions." ***Pabon***, 525 S.W.3d at 768 (citing ***Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1***, 908 S.W.2d 415, 426 (Tex. 1995) (quoting ***Walker v. Salt Flat Water Co.***, 96 S.W.2d 231, 232 (1936)).

Benton states that "[d]espite reminders from [him], [Contractor's] failed to serve lien notices on time which apparently prevented further payment from Regent Construction." Benton argues that he created a fact issue with respect to his defense that Contractor's failed to mitigate its damages because he showed that Contractor's failed to timely serve lien notices related to the project. He further argues that "[Contractor's] summary judgment briefing...cites just one unpublished case for the proposition that Texas law does not recognize the failure to pursue liens as a failure to mitigate." *See* ***Kondos Entm't, Inc. v. Quinney Elec., Inc.***, No. 04-96-00251-CV, 1999 WL 1261455 (Tex. App.—San Antonio Dec. 29, 1999, no pet.) (op.).

In ***Kondos***, Quinney was retained by Kondos Entertainment, Inc. (Kondos) to do electrical work for the construction of a night club in San Antonio, Texas. ***Kondos Entertainment, Inc. v. Quinney Elec., Inc.***, 948 S.W.2d 820, 821 (Tex. App.—San Antonio 1997), *rev'd,* 988 S.W.2d 212 (Tex.1999). When it was not paid, Quinney sued Kondos, Jay Snyder, a representative of Kondos, and V-Ball, Inc. (V-Ball), the company named on the checks Snyder used to pay Quinney's invoices. *Id.* at 822. Four months after suit was filed, V-Ball filed for bankruptcy. *Id.* Quinney filed a proof of claim for $83,991.32 with the bankruptcy court which was accepted as a general unsecured claim and paid. *Id.* Quinney pursued its claim in state court against Kondos and Snyder, ultimately securing a judgment of $83,991.21 in actual damages, $18,839.13 in prejudgment interest, $20,000.00 in attorney's fees, and $978.00 in court costs. *Id.* Post-judgment interest on the foregoing sums was also awarded. *Id.* The court further ordered the $83,991.32 awarded to Quinney in the bankruptcy proceedings be credited to the amount in the judgment, ultimately resulting in a judgment against Kondos and Snyder in the unsatisfied amount of $40,083.58, plus post-judgment interest, which represented primarily the prejudgment interest, attorney's fees, and court costs not included in the amount paid in

connection with the bankruptcy. *Id.* The Fourth Court of Appeals ultimately held that Quinney was collaterally estopped from bringing suit because the specific issues central to Quinney's claims were previously litigated in the bankruptcy proceeding. *Id.* at 824-25. The Texas Supreme Court reversed the Fourth Court's decision and remanded the case to the Fourth Court to consider Kondos' and Snyder's additional points of error.

In one of those additional points of error, Kondos and Snyder argued that Quinney failed to mitigate damages because Quinney failed to file a materialman's lien, which would have resulted in its claim being secured against V-Ball in bankruptcy and allowing it to recover interest and attorney's fees against V-Ball. ***Kondos***, 1999 WL 1261455, at *3. The court rejected this argument because the attorney's fees and interest could not have been "avoided," and the lien simply would have enabled Quinney to collect the same amount from a different source. *Id.* at *3. The court went on to state that "Kondos and Snyder are really contending that Quinney's filing of the lien might have minimized the 'loss' to Kondos and Snyder, not the damages to Quinney." The court held that "[t]he doctrine of mitigation does not apply in that manner." *Id.* at *4.

Here, Benton argues that the factual scenario in ***Kondos*** is distinguishable from this case because

> [t]he ***Kondos*** scenario is talking about attorney's fees and interest that are not even damages that could have been awarded in the original breach of contract case. That is why the ***Kondos*** opinion says that such damages would have been "avoided." There is reason Contractor's Supplies cannot point to any other case for the legal proposition that failing to send a lien notice absolutely cannot constitute a failure to mitigate damages—because it is misreading the Kondos case and attempting to apply it overly broadly.

We disagree with Benton's interpretation of the ***Kondos*** court's holding and reasoning. The operative reasoning behind the ***Kondos*** holding is that the filing of a lien did nothing to avoid Quinney's damages; the only effect of the lien would allow Quinney to collect his damages from another source. *Id.* at *3. The lien might have allowed Quinney to collect the damages from a different source and minimized Kondos' and Snyder's exposure, but it would not have avoided Quinney's damages, and therefore does not implicate the mitigation of damages doctrine. *See Id.* at *4.

We find the ***Kondos*** holding persuasive in our analysis of this issue. Here, Contractor's damages would not have been avoided had it correctly and timely filed its lien. Rather, the lien

would have allowed Contractor's to collect its damages from another source, Regent. This would have minimized Benton's exposure but would have done nothing to "avoid" Contractors' damages. *See Id.* at \*4. Thus, we conclude that the trial court correctly granted Contractor's no evidence summary judgment motion on Benton's affirmative defense that Contractor's failed to mitigate its damages. *See* TEX. R. CIV. P. 166a(i); *Johnson*, 73 S.W.3d at 206–08.

*Conclusion*

Accordingly, for the above reasons, we overrule issue two.

### DISPOSITION

Having overruled both of Benton's issues, we ***affirm*** the trial court's judgment.

GREG NEELEY
Justice

Opinion delivered October 6, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 6, 2021**

**NO. 12-20-00207-CV**

**MARK BENTON, INDIVIDUALLY AND D/B/A MEBCO CONTRACTING,**
Appellant
V.
**CONTRACTOR'S SUPPLIES, INC.,**
Appellee

Appeal from the 159th District Court

of Angelina County, Texas (Tr.Ct.No. CV-00387-19-07)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, all costs of this appeal are assessed against the Appellant, **MARK BENTON, INDIVIDUALLY AND D/B/A MEBCO CONTRACTING**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*